IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL PARKER,<br><br>                 Plaintiff,<br><br>         v.<br><br> GARY REDMAN, et al.,<br><br>                 Defendants. | No.  2:22-CV-1838-KJM-DMC-P<br><br><br>ORDER |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint, ECF No. 1.

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody.  See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply,

concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

At the time the complaint was filed, Plaintiff was a pretrial detainee and alleges the events outlined in his complaint occurred at the Amador County Jail.  See ECF No. 1 at 1, 8.  Plaintiff names the following as defendants: (1) Gary Redman, Sheriff; (2) J. Martin, Captain; and (3) Monivirin Son, doctor.  Id. at 2.

Claim 1

Plaintiff's first claim identifies the issue involved as relating to his medical care.  See id. at 3.  Plaintiff states that he was hospitalized on August 2, 2022, and taken from Amador County Jail to the emergency room in Jackson, California.  See id.  Plaintiff believed he was having a heart attack.  See id.  Plaintiff states that "at that time I was placed in a safety (padded cell) cell for observation."  Id. Plaintiff asserts that he requested medical attention for a second time, but the sheriffs responded that they were just going to observe him.  See id.  Plaintiff claims he was under severe distress and had a blood pressure of 160/150, which he knew because his blood pressure was being monitored by Correctional Officer Cavall and Correctional Officer Ward.  See id.  Plaintiff adds "it is my understanding safety cells are not to be used as medical observation cells."  Id.  Plaintiff contends that it was unacceptable that no medical professionals were present to determine whether he was an emergency patient.  See id.  Plaintiff continues that his "life should not be left in the hands of officers with no professional medical qualifications deciding on the next step in treatment."  Id.

/ / /

Plaintiff states that during his visit to the hospital a growth was found in his lung. See id. Plaintiff alleges that he requested "further treatment and medical records," but was denied by Doctor Son. See id. Plaintiff states that he was told to "request on the outs." Id. Plaintiff claims he was also told if he wanted further treatment he would have to pay for the transportation and medical care. See id. Plaintiff ends his supporting fact section for this claim by directing the Court to see the documents attached to Plaintiff's complaint, which he titles Exhibit 1-A through 1-E. See id. Exhibit 1-A is a grievance form; Exhibit 1-B is Plaintiff's patient history; Exhibit 1-B.1 is a request for further testing; Exhibit 1-C is a doctor's work order stating "request on outs"; Exhibit 1-D is a lab result of the Plaintiff's emergency room visit; and Exhibit 1-E is the denial of a request for medical care. See id. at 10.

Claim 2

Plaintiff's second claim identifies the issue involved as relating to his basic necessities. See id. at 4. Plaintiff alleges that upon his admittance to Amador County Jail in July 2022, the shoes he was given had "missing soles or holes and cracks not protecting the feet adequately." Id. Plaintiff adds that the shoes were undersized because they did not have size nines. See id. Plaintiff states that he requested shoes almost daily for months but was continuously denied the basic necessity of footwear, impacting his right to safely participate in any "wellness or recreational exercise which is detrimental to wellbeing and physical health." Id. Referencing the grievance form attached to Plaintiff's complaint, which he titles Exhibit 2, Plaintiff states he "was told at one point socks and sandals is all that is required." Id.

With respect to how Plaintiff was injured by these actions, Plaintiff alleges he experienced "[i]rreperable harm caused to my physical and mental wellbeing due to [the] injury of insufficient coverings of my feet (blisters) and [the] inability to exercise as well as discrimination." Id. Plaintiff further states there were administrative remedies available to him, he did submit a request for administrative relief for this claim, and he appealed that request to the highest level. See id.

///

///

        Claim 3

Plaintiff's third claim identifies the issue involved as relating to a threat to his safety. See id. at 5. Plaintiff alleges that due to overcrowding at the jail "inmates are required to sleep on floors, share toilets in the housing units and repeatedly get woke up from sleep to 'step' into a cell at times we are locked in a cell with size specifications not to exceed 2 inmates for hours." Id. Plaintiff asserts that from September 5, 2022, to September 9, 2022, Plaintiff and two other inmates were "taken out of the unit to allow 'lockdown' inmates dayroom and recreation time." Id. According to Plaintiff, this resulted in the stripping of his rights to basic necessities, such as the ability to drink or use the toilet. See id. Plaintiff adds that "it is my understanding that the holding tank 'H1' that us 3 inmates were placed in from 7am to 3:30pm is not to be used as an auxiliary cell." Id. Plaintiff further alleges that when they were requesting a grievance for this issue they were threatened by Sergeant Henderson who said "[w]ould you rather all be in a 2 man cell for the duration" and "[n]o I'm not giving you a grievance." See id. Plaintiff ends his supporting fact section for this claim by directing the Court to see the grievance form attached to Plaintiff's complaint, which he titles Exhibit 3. See id.

        Claim 4

Plaintiff's fourth claim also identifies the issue involved as relating to a threat to his safety. See id. at 6. Plaintiff states that "[o]n or about the first week of September inmate Michael Lye and myself requested to speak to a Sergeant." Id. Plaintiff asserts that Sergeant Holstein "pulled us and recorded our conversation regarding an inmate handling our food that has a communicable disease. We were assured that this is not happening." Id. According to Plaintiff, inmate Barry Stenridge was witnessed by both Plaintiff and other A-pod inmates handling their food while their pod was attending recreation. See id. Plaintiff further alleges that the inmate has AIDS and was seen handling their trays without PPE through the window on the recreation yard. See id. Plaintiff adds, "[t]his continued even after bringing attention to this matter." Id. Plaintiff claims he immediately asked Officer Linzmaier to note on record who was working in the kitchen on September 14, 2022, at 4:00pm. See id. Plaintiff alleges that "our unit 'A-pod' was assured that the inmate does not handle food." Id.

Claim 5

Plaintiff's fifth claim identifies the issue involved as excessive force by an officer. See id. at 7.  Plaintiff alleges that "while housed in cell A, 9-10 in A pod in Amador County Jail I noticed that the addition of the cameras in A pod were poorly placed and strip me of any modesty while evacuating any bowel movements." Id.  Plaintiff states that his understanding is that "toilet areas 'shall' provide modesty to inmates and not depreciate me of any basic human rights."

Claim 6

Plaintiff's sixth claim also identifies the issue involved as relating to "[g]ross negligence/safety" See id. at 8. Plaintiff alleges that "[a]s seen in exhibits 6, A thru E there is gross negligent behavior in regards to policies set forth by the county jail and [a] lack of following their procedures." Id. Plaintiff contends that the Jail staff does not follow their own rules set forth in the inmate grievance form guidelines found in Title 15 section 1073 and attached to this complaint as Exhibit 6-D. See id. at 8, 32. Plaintiff argues that "[i]t is not uncommon for inmates to have grievances responded to late or not returned at all.  As you can see in the grievances ex 1-5 at level IV review there is no time stamp." Id. at 8.  Plaintiff adds that in the grievance forms and responses attached to this complaint, which Plaintiff titles exhibits 6-B and 6-E, "they state I have to write a letter. That is asinine." Id. Plaintiff states that as can be seen in the exhibits which include the responses of the lieutenant and captain, there is a grossly negligent attitude towards addressing inmate issues and the issues get ignored by staff stating that they have adequately addressed the grievance. See id. Plaintiff alleges that "statement lies herein as an opinion when it's clear the grievance is clearly ignored." Id.  Plaintiff ends his supporting fact section for this claim by directing the Court to see the documents attached to Plaintiff's complaint, which he titles Exhibit 6 A-E.  See id.  Exhibits 6-A, 6-B, 6-C, and 6-E are all inmate request slips.  See id. at 10.  Exhibit 6-D is the inmate grievance form guidelines.  See id.

/ / /
/ / /
/ / /
/ / /

## II.  DISCUSSION

Plaintiff's claims are not cognizable because the complaint does not connect the listed defendants to the alleged constitutional violations.  Plaintiff will be given leave to amend to add defendants and explain who is responsible for the acts or omissions in his claims.

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act.  See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

///

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

The Court discusses each of Plaintiff's claim in the context of the standards outlined above.

Claim 1

A pretrial detainee's medical care claim arises under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124 (9th Cir. 2018). Medical care claims are treated substantially the same as other conditions of confinement violations including failure to protect claims. Id. Accordingly, claims for violations of the right to adequate medical care brought by pretrial detainees are evaluated under a deliberate indifference standard. Id. at 1124-25.

To present a cognizable medical care claim, a pretrial detainee must plead: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. Id. at 1125. For the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each case. Id. "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." Id. (quoting Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016)).

///

Plaintiff alleges that he was placed in a safety cell when he thought he was having a heart attack. ECF No. 1 at 3. His blood pressure monitor read 160/150. Id. He requested medical attention at least twice, but "sheriffs" declined and said they were just going to observe him. Id. Plaintiff was disturbed that the sheriffs, and not a medical professional, was overseeing his care. Id. At some point, a growth was found in Plaintiff's lungs. Id. Plaintiff requested treatment but the treatment was denied. Id. Plaintiff was told that he would have to pay for the care if he wanted further treatment. Id. Plaintiff pleads plausibly that he was entitled to medical care, but he does not name a defendant that is responsible for the actions or omissions related to his medical care. He must do so to state a cognizable claim.

Claim 2

A pretrial detainee is protected by the Fourteenth Amendment's Due Process Clause against jail conditions or restrictions that amount to punishment. Olivier v. Baca, 913 F.3d 852, 857 (9th Cir. 2019) (quoting Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008)). "[I]f a condition is not reasonably related to a legitimate goal . . . a court permissibly may infer that the purpose of the governmental action is punishment." Bell v. Wolfish, 441 U.S. 520, 539, 99 S. Ct. 1861, 1874, 60 L. Ed. 2d 447 (1979). Exercise is one of the basic human necessities that prisoners and pretrial detainees the constitution protects. Cnty. of Orange, 526 F.3d at 1211.

Plaintiff asserts that he was denied proper footwear, which caused damage to his wellbeing and physical health. ECF No. 1 at 4. The improper footwear also limited his ability to exercise. Id. Plaintiff may obtain relief only if he properly names a defendant responsible for his lack of footwear. He does not do so.

Claim 3

As discussed above for Plaintiff's second claim, a pretrial detainee is protected by the Fourteenth Amendment's Due Process Clause against jail conditions or restrictions that amount to punishment. Baca, 913 F.3d at 857. Being forced to sleep on the floor may constitute a constitutional violation. See Thompson v. City of Los Angeles, 885 F.2d 1439, 1448 (9th Cir. 1989), overruled on other grounds by Bull v. City and Cty. Of San Francisco, 595 F.3d 595, 981

(9th Cir. 2010), and Rutherford v. Pitchess, 457 F. Supp. 104, 109 (C.D. Cal. 1978).

Plaintiff maintains he was kept in conditions where he had to sleep on the floor and was kept in cells not appropriate for the number of prisoners kept inside. See ECF No. 1 at 5. He was denied the ability to drink or use the toilet. Id. Plaintiff pleads facts sufficient for a claim for inappropriate conditions, but again fails to name a defendant that is responsible for the conditions.

### Claim 4

Plaintiff's next claim revolves around Officer Linzmaier failure to provide adequate protections for Plaintiff's food. See ECF No. 1 at 6. However, Plaintiff does not list Officer Linzmaier as a defendant; he does not name any defendant as a person responsible. Without a named defendant being responsible for the actions or omissions, Plaintiff does not present a cognizable claim.

### Claim 5

Plaintiff presents his fifth claim as an excessive force claim, though this Court construes it as a privacy claim. See ECF No. 1 at 7. Plaintiff claims that there were cameras that recorded Plaintiff's use of the toilet. Id. While Plaintiff was entitled to some degree of privacy, Plaintiff again fails to name a defendant that was aware of the issue and failed to correct it. See id. Without a named defendant responsible for the action or omission, Plaintiff does not present a cognizable claim.

### Claim 6

Plaintiff's final claim complains about general inaction and the delay in responsiveness of prison officials. ECF No. 1 at 8. This claim is too vague and conclusory to be cognizable. A claim must point to specific facts in a specific instance that resulted in a harm. Further, Plaintiff does not name a defendant as an individual responsible for the acts or omissions.

///
///
///
///

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b).  See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's original complaint is dismissed with leave to amend; and

2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

Dated: August 15, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE